We move to case number four, United States v. Ryan. Good to see you again, Mr. Hillis. Good to be back. Thank you, Your Honor. It was a long trip. It may have pleased the court. I represent Mr. Ryan in this appeal. He also raises four issues, and I'll begin with the motion that he made for new counsel. He presented that in advance of trial, not far in advance, but he raised it, and the judge did not do much by way of considering the request, and that is especially problematic here because under the case law, a person can be constructively denied their Sixth Amendment right to counsel if there's an inadequate inquiry by the judge in assessing the relevant factors or making the necessary inquiry, and that is what happened here. There's a troublesome feature of the colloquy that occurred insofar as the government representative, the AUSA, was able to remain present throughout the colloquy where the defense counsel had to explain to the district court what the reasons were for the substitution of counsel, which is still another problem because Mr. Hillis, I've read the Harris case that you cited, and I still do not have the sense for the basis for your argument that any claim that a hearing on a motion for substitution of counsel must, must underline, be held outside the presence of the government. I mean, is that what you are arguing, that it must be held? Your Honor, I think that it should. I've argued must. If Harris doesn't support what my view is, I apologize, but I think that it is a bad practice to allow the representative of the government to be present when somebody is going to be there in response to the judge's question, perhaps outlining what witnesses were contacted, what the theory of the defense might be, and those things happened here. And furthermore, I don't see any reason why the government's representative should be present for this, which is basically a private matter between defense counsel and his lawyer to say that to the satisfaction of the judge, he's being well represented in the case. I don't understand why the government would need to be present for that. And the fact that it occurred here is troubling to me because the attorney took an adverse position relative to the defendant in saying, Judge, I can still represent this person despite the person still being under a duty of advocacy and loyalty to the client to act in the client's interest. It's not for the lawyer to say, Judge, I can still do the case. It's rather for him to still zealously represent the client and do what the client wants done, which was reasonable in this circumstance, given that he was called a dumbass, and that was not refuted, by the way, given the lack of communication, that was not refuted, by the way, and all the other things that happened in this case. The lawyer should have gotten out of the case, not argued to stay in it, and no, the government should not have been present for all of this. It should have been done ex parte, in my opinion. I mean, is there anything about Ryan's relationship with his lawyer that Ryan can point to and say, Look, this is where I was really prejudiced and the outcome would have been different if I'd had a better relationship with my lawyer? Hard for me to say that there was a turning point of that type. The witnesses that my clients say should have been gotten, we can only speculate about what the testimony might have been. The defense that my client wanted given, how it turns out in the hands of a different lawyer, we can only speculate about again. The inability to show those things, though, Judge, doesn't change the outcome of the argument because we don't have to show prejudice. We just have to show that the judge, in handling it the way that he did, led to a constructive deprivation of my client's Sixth Amendment right to counsel by keeping the lawyer in the case who should have been allowed to be substituted for. I think that's the bottom line. And we don't have to show prejudice under the case law that we've cited, Your Honor, so your point is taken, but I don't think that it's analytically necessary to get the relief that we're seeking here. And if there are no further questions on that point, I'll move to my next one, which is that the distribution conviction should be vacated here because the government simply didn't present the necessary evidence to establish distribution, which is one of the elemental requirements for the specific offense here. So to prove just... Are you arguing, I mean, I can't tell, but are you arguing that the evidence of distribution was so weak that no reasonable jury who found him guilty of possessing the images also could have found that he knew that they were shareable? Is that your argument? Your Honor, I'll say this exactly. The government didn't prove the necessary facts to make the inferences that you're referring to. So if my client had confessed, if there was proof of his knowledge about what the file-sharing folders were, how they worked, et cetera, that would be all adequate. However, it was only the case agent who testified about what he knew of how the file folders, the shared folders, operated. That's not enough because that shows what he knows. It doesn't show what my client knew. That's a very significant difference in this case. But hasn't the circuit already decided that placing images in a shareable folder is distribution? This Court has, with the necessary underlying facts about how the defendant knew that the file-sharing folder operated. So that's an important distinction. That didn't happen. But we are also making an argument, and it's a construction based on the plain language of the statute, that circuit precedent is incorrect insofar it says simply making materials accessible to somebody qualifies as distribution because as a matter of a dictionary definition, you have to give out something to a person for there to be distribution. Making it accessible isn't enough. That's completely different. One requires an active effort, one is a passive thing, and the two things cannot be substituted. Well, the Tenth Circuit came up with a case using the gas station thing. It did, and I'm not certain, though, that the Tenth Circuit was correct on that, and I think it was incorrect, but we also have a rule of leniency, excuse me, a rule of lenity argument that we've presented here, and I don't recall that being a feature in the Tenth Circuit case. But this circuit is free to disagree with the Tenth Circuit's interpretation, and I think that it should. The dictionary definition should carry the day on what it is to distribute something. Except this was not, at least the evidence would indicate that he was fairly sophisticated in using computers, I would say. Sophisticated relative to me, maybe, but I don't know that much about computers. I don't know. Nor do I. But I think this is the pitfall. We stand in buried electro. Well, I feel I'm in good company on this one then because if you and I don't know enough about computers and yet it seems that this is sufficient and so forth, it needs to be explained to the jury about what it is that the evidence really shows as opposed to... Well, look, he was using blocking programs to prevent certain people from having access to some of the contents of his hard drive, but not others. Wouldn't that be evidence of his knowledge of how the distribution of these images were? And wouldn't it be sufficient for a rational jury to conclude that he was sharing images? I don't think so, Your Honor. I think that leads to leaps of fact in the conclusions that we're entitled to make here. The case agent testified about some of the peer blocking and ghost surfing programs that were used here. But recall that he said that the peer blocker, I think, was one of the things that was used to prevent spamming. Well, spamming is not illegal. It's annoying. It can't be illegal. I take that back. But it's certainly annoying. Nobody wants to be subjected to it. So using a program that defeats spammers doesn't show that you're engaged in any illegal conduct. So we can draw that right from the case agent's testimony in the case. And to want to search something privately, that doesn't, again, show that you're doing something that is illegal. And so those programs do not in and of themselves allow for the sort of conclusions to be reached that the jurors might want to reach here. And in any event, we go back, I think, in a stronger context to what the language of the statute is. And even if we were to say that we would infer that somebody may have some sophistication because they use programs, I think that's a leap because I use programs and I barely know how to turn the computer on some days, it seems like. But using a program doesn't say that you know all of its applications and that you're using it for a nefarious purpose. And that's not a fair conclusion for the juror to reach here, jurors to reach here. And it's also still a problem that if you have something in your possession but you do not give it out, I think that is the more essential question here in this case on this issue. As far as the third issue, it was a computer that was improperly forfeited. Following the jury proceedings to determine guilt, there had to be... I would say this is your strongest argument. If you want the computer back. He should at least have had the jurors make the determination, Your Honor. I think that's absolutely correct. And so the rule requires it and it wasn't done. I think it was an oversight by the judge and it was a misplay by the government not asking, perhaps, that this be done. But it's done wrongly and so I think we are entitled to relief on this issue. We'd like relief on all three, by the by. But certainly on this one, I think we're on pretty solid ground. Merely obtaining a guilty verdict collapses the two different things that are required here. You have to have a guilty verdict and you have to have a jury determination on forfeitability. And the government's position essentially wipes the second part of this off the books, that jurors no longer have to make the determination that is required by the rule. So we don't think that they can prevail in that position. Fourth, the judge errantly imposed the distribution enhancement under the guidelines. It is a separate issue and I quite understand that my client's been convicted of distribution. Nevertheless, the judges are supposed to make the determination about the applicability of the guidelines. A conviction cannot be in lieu of the factual findings to support the enhancement. And my client, even though he was convicted, the evidence that the judge pointed to was sophistication of the computer and the existence of the conviction to say that the distribution occurred. We don't think that that is a correct application of what the law is, what's required by way of his guideline determinations. And, of course, we take issue with the conviction itself and we take issue with the sophistication of the programs. They're not sophisticated programs. Installing them on the computer and using them doesn't show distribution. And so we take issue with that as well. We ask for relief in the form of vacating the infirm count of conviction and I will reserve the balance of my time. Thank you. Mr. Whalen. Good morning, Your Honors. May it please the Court. My name is Nathaniel Whalen and I'm here on behalf of the United States. I'd like to pick up where Mr. Hillis just left off, which is with the sophistication of the programs. I disagree. PeerBlocker, I think, is a very sophisticated program. And it's a program, Mr. Hillis says, there's testimony that it's about spamming. There's also testimony that Mr. Ryan obtained a list of IP addresses for law enforcement and he input that into the PeerBlocker program. So essentially what he did is he put up a curtain and said, law enforcement, you can't see what I'm doing. From that, the jury could very reasonably infer he understood exactly what he was doing. He knew he was distributing child pornography. Mr. Whalen, did he stipulate that pornography was distributed or not? Your Honor, he did not stipulate it in the legal sense. It is our position that he did waive the sufficiency of the evidence argument. As I understand his use of the word stipulation, it's basically we agree the government can prove distribution. That's kind of how he lays it out at the Rule 29 conference. But he does tell the jury both in openings and closings, there's only one issue in this case, and it's identity. And to Your Honor's point, that raises us, assuming this Court doesn't find waiver, which we think there is in this case, we're at least on plain error standard for sufficiency of the evidence. This Court has called that the most demanding standard. So the question is, would it be a manifest miscarriage of justice to find that Mr. Ryan knowingly distributed child pornography? Our position is absolutely not in light of this peer blocking program, in light of the CyberGhost program that let him share these files anonymously, in light of the fact that this is a man who took steps to create video games, this is a man who had sophisticated programs on his computer, and he used file sharing. And the other courts that have considered this issue have noted, when you use something called file sharing, you can infer that the defendant knows you're going to share files. To the extent that the judge made a separate determination that he had distributed the images for purposes of enhancement, or did he simply rely on the jury's finding of distribution from the guilt portion of the trial? The judge did both, Your Honor. He made a separate determination that the sophistication of the software supported the enhancement, and that's the position that we've taken, that the use of the peer blocker, the CyberGhost, the steps that Mr. Ryan took to create video games, his general computer sophistication. The judge separately said, in light of the fact that the jury's found beyond a reasonable doubt that he knowingly distributed, I'm going to find by preponderance of the evidence that he knowingly distributed. The guilty verdict all but compelled the sentencing enhancement in this case. You know, this is a minor issue, I suppose, but if the government were required to return the computer, why couldn't it just wipe it clean? I don't understand that argument that the government would be guilty of distributing pornography. I understand Your Honor's point. What Mr. Ryan is asking for is he's asking for his computer that contained all the child pornography back. His initial request on appeal was not that it be wiped clean. I presume he would hope it would be wiped clean, but more importantly, he hasn't shown any prejudice. Well, we could order it be wiped clean. Your Honors could certainly order it to be wiped clean, but Mr. Ryan hasn't shown any prejudice by the failure of the jury to return a separate verdict of forfeiture. There was only one item in this case that had child pornography on it, and that was this computer. So when the jury says, you, Mr. Ryan, possessed, received, and distributed child pornography, it was saying you did it via this computer, this HP 4-in-1 All Pavilion. There's no prejudice, and since we're on plenary review, it's his burden to show there's prejudice, and he hasn't done so in this case. Your Honors, turning quickly to the first issue about whether there was an abusive discretion to deny the motion to substitute counsel, this colloquy was not the type that this court has found insufficient. The court has looked at colloquies where the judge says, all right, you filed something. Do you have anything else to say? Or the court listens to defense attorneys say, I can't represent this defendant, and then the court says, yeah, we're going to make you represent this defendant. Or the court doesn't conduct a colloquy. Those are the colloquies that are problematic under this court's precedents. Well, I mean, I have to talk to you. I would like you to explain to me why the court didn't dismiss the government when it admitted it had no pony in the race So it could have had a more thorough evaluation of Mr. Ryan's claims. I mean, it's not required for the court to hold the hearing on substitution of counsel with the government present, is it? It is not required, Your Honor, but nor has this court prohibited it at any point. The reason the court – I can only speculate as to why the court didn't dismiss him, but I can tell you that defense counsel didn't ask that the government be dismissed. And again, based on my speculation and reading of the record, what we have is Mr. Ryan claiming that his defense counsel crammed this plea agreement or three potential plea agreements down his throat. And I think in that situation there is value in having the AUSA in the room to discuss what's happened with these plea agreements, what's been offered, what hasn't been offered. Why can't the government be out of the room and then be called back in the room? The court certainly could have done that, Your Honor, but it was an abuse of discretion to leave the government in the room. And the court did take steps, as did defense counsel, to say, listen, the government's in the room, so be careful what you say. Defense counsel still represents you. If you have a question about anything at this point, you should reach out to defense counsel and talk to defense counsel. That's what Judge Miller tells the defendant. At a certain point, defense counsel says, listen, I could get into more details, but I don't want to. I want to preserve this defense for Mr. Ryan. But the point is defense counsel discussed all the steps that he took in this case, and Mr. Ryan was able to get out every point he wanted to about where he thought the relationship problem was. At that point, the court said to Mr. Ryan, tell me what defense counsel got right, what it got wrong. It gave Mr. Ryan the opportunity to say everything he wanted to say on this issue, and that's what this court's precedent requires. How do we know he got to say everything he wanted to say? Well, he ends his first statement by saying, that's all I have. Well, that's all I have, because look who's in here. No, that's not what he says, Your Honor. He says, that's all that I have. Look who's in the hen house, or whatever. Had he had other points, presumably he would have raised them at sentencing when this issue was up again. But the court says, listen, how's your relationship with counsel at sentencing? Defendant says, oh, I have the same problems that I had previously. It's about the witnesses. It's about the communication. He doesn't raise anything else that he wished he could have gotten out. He doesn't raise anything else on appeal that he was prevented from saying by either the court's colloquy or the government's presence in the room. There is no evidence that he was restricted in what he could say. Finally, this court's precedent looks at whether there's been a complete and total breakdown in communication. Mr. Ryan's arguing on appeal that there were some problems in this relationship. And I don't think we can stand up here and dispute that. But that's not the question. The question is whether there's been a total breakdown in communication between defense counsel and the defendant. And in this case, you have them engaging in phone calls two days before this colloquy. You have them continuing to prepare a defense together. They've clearly delineated tasks between the two of them as to how to prepare this defense. The district court just didn't clearly err in finding this relationship was fixable. And based on the defense that he put forward, the defense he wanted, I think it shows the relationship was fixed to a large extent. Unless this court has any further questions, we would ask that you affirm. Thank you. Thank you, Your Honor. Mr. Hills? You have three minutes, Mr. Hills. You don't have to cease communications once you have a breakdown in communications with your lawyer in order to drive the point home that the relationship is irretrievably broken. You don't have to cut your nose off to spite your face and stop having communications with the one person who's able to represent you. The problem here is that this lawyer should have been allowed to withdraw from the case based on the record. And the judge did not make the necessary determinations to show that the person, the lawyer, should have been able to stay in. The government points to things that we don't know about what else might he say that would have allowed this. Those are extra record things. I might be able to provide them. I don't think it would be appropriate for me to do so. The point is, they're not in the record, and they're not there because the judge didn't make the necessary inquiries before ruling on the substitution of counsel motion. The proper procedure must be followed with respect to the forfeiture of the computer, and it wasn't. It's not for us to say that something is impossible for us to prove prejudice. The problem here is it's a procedural requirement that the rule requires it, even if there's not an objection. The rule was not properly applied. We do not have to show prejudice. We can point to the rule. And I believe that concludes the points that I wish to make, unless the court has any other questions other than this. I'm sorry. The government mentioned about stipulation not in a legal sense. In the courtroom, it's only in the legal sense. There was no stipulation, and therefore the government can't say that there was an implicit one or one that was understood or one that counsel said that there was. But then the judge said, no, there wasn't. There's only something else that's stipulated to. We go with what the judge says. They're the commander of the courtroom. There was not a stipulation on the thing that the government says that there was something akin to a stipulation. With that, I have nothing further. Thank you. Thank you, Mr. Edelson. Thanks again to both counsel. And we move to the fifth case.